IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case 12 CR 516 |
| | ) |
| Kenneth Bell and Antonio Walter, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

On October 24, 2013, a jury convicted defendants Kenneth Bell and Antonio Walter of a conspiracy to distribute heroin. Before me is Bell's renewed motion for a new trial, which defendant Walter joins,[1] in which Bell reasserts one of the claims he raised in his post-trial motion for judgment of acquittal, or, in the alternative, a new trial, which he filed on November 25, 2013.[2] I denied that motion summarily on January 31, 2014.

---

[1] I agree with the government that Walter's joinder in Bell's motion is puzzling, as all parties have long agreed that the disputed evidence relates only to Bell's conduct. Because the motion fails as to Bell, however, there is no reason to discuss it separately with respect to Walter.

[2] As I have previously explained, *see* DN 117, although the docket reflects the filing, on November 22, 2013, of a document titled "MOTION by Kenneth Bell for a new trial," *see* DN 98, the document corresponding to that entry is not Bell's motion for a

In his renewed motion, Bell argues that the Seventh Circuit's *en banc* decision in *U.S. v. Gomez*, 763 F.3d 845 (7th Cir. 2014) "radically changed this Circuit's test for the admission of 404(b) (prior bad act) evidence." Under the new rule, Bell insists, the admission of evidence at trial of a controlled purchase of heroin involving Bell, which was unrelated to the charges in this case, violated the evidentiary proscription against the use of propensity evidence. For the following reasons, I deny Bell's motion.

I.

The government's case against Bell was supported by the testimony of five cooperating witnesses as well as financial evidence of Bell's "unexplained wealth."[3] After the government rested, Bell called two witnesses, FBI Task Force Officer Michael Lipsey, and Chicago Police Officer Quang Ngyuen, to testify in his defense. Bell's examination of these witnesses sought detailed information about the various tactics used in the investigation that led to the charges in this case and many others. The purpose of the testimony these witnesses provided

---

new trial, but Bell's motion for leave to file an oversized brief, a duplicate of which was also filed at DN 99. Because Bell first articulated the substantive bases for his claim for a new trial in the memorandum he filed three days later, that is the day on which I deem his motion to have been filed.
[3] The government's evidence is discussed more fully in another opinion issued today resolving defendants' post-trial motion based on *Brady v. Maryland*, 373 U.S. 83 (1963).

was to support Bell's defense theory that if the government's extensive investigation failed to produce evidence of Bell's participation in the charged conspiracy, then he must not be guilty of it.

At the start of his examination of Officer Lipsey, Bell's counsel asked, "Officer Lipsey, were you involved in the investigation of this conspiracy investigation (sic) known as Operation Blue Knight, I believe?" Tr. 1130. The government explains, and Bell does not dispute, that Operation Blue Knight resulted in federal and state charges against approximately one hundred defendants. Officer Lipsey testified that he was involved in the investigation in various capacities throughout its two-year duration. In addition to the present case, Bell was charged in a separate federal case with one count of heroin distribution. *See* 10 CR 964 (N.D. Ill. 2010).

Bell questioned Officer Lipsey in detail about the surveillance, controlled purchases, consensually recorded phone calls, wiretaps, seizures, and arrests made as part of Operation Blue Knight. Bell asked Officer Lipsey to explain for the jury what a "controlled purchase" is, how such purchases are carried out, and the nature of the evidence they produce. Bell then asked, "[a]nd in this case, you did numerous controlled purchases, is that correct?" Officer Lipsey responded, "A little over a hundred, I believe." Tr. 1132.

3

On cross-examination, the government questioned Officer Lipsey about the controlled buys he had testified about on direct:

> Q: Officer Lipsey, Mr. Bell's attorney asked you some questions about the various law enforcement methods used in this case. Do you recall those questions?
>
> A: Yes.
>
> Q: He asked you if law enforcement conducted any controlled buys in this case. Do you remember that?
>
> A: Yes, I do.
>
> Q: And he asked you to explain what those were?
>
> A: Yes.
>
> Q: Did you law enforcement conduct any controlled buys into the defendants in this case?
>
> A: Yes.
>
> Q: Which defendant?

Tr. 1137-38. At that point, Bell's attorney objected and requested a sidebar, where he asked for a proffer of Officer Lipsey's testimony. Tr. 1138. The government stated that Officer Lipsey would testify that one of the "little over a hundred" controlled purchases he testified about was made from Bell. Bell objected to the admission of this testimony on the ground that the controlled purchase was the basis for the separate heroin distribution charge against Bell and was not related to the conspiracy in this case.

4

The government responded that Bell's inquiry into Operation Blue Knight, including specific questions about the controlled purchases made in the course of that investigation, opened the door to the government's inquiry into any of those purchases on cross-examination. The government reasoned that because Bell framed Officer Lipsey's examination in terms of "Operation Blue Knight," his questions elicited answers that went beyond the scope of the charges in this case. The government argued that it was therefore entitled to rebut the misleading suggestion that the absence of evidence in the government's case-in-chief of any controlled buys involving Bell meant that none of the "little over a hundred" buys Officer Lipsey mentioned were from him. I concluded that the government's questions were proper for that purpose.

On cross-examination, Officer Lipsey testified that on February 24, 2010, a confidential informant wearing a recording device purchased fifty grams of heroin from Bell and received an additional fifty grams of heroin for which payment would be made at a later date. Tr. 1140. Officer Lipsey further testified that law enforcement surveilled the purchase, then debriefed the confidential informant and recovered the heroin. Tr. 1141. Two weeks later, law enforcement surveilled the payment transaction for the additional fifty grams of heroin and observed Bell meeting with the confidential informant, who was again wearing a

5

recording device. *Id*. The government did not seek to introduce the video surveillance of these transactions, any evidence captured by the recording device, or the heroin that was recovered.

On re-direct examination, counsel for Bell confirmed that the confidential source who made the heroin purchases from Bell "wasn't involved in this conspiracy." Tr. 1143.

After the jury was excused, Bell's counsel requested an instruction to ensure that the jury would not consider Officer Lipsey's testimony about the controlled purchase as evidence of the charged conspiracy. Bell's proposed instruction read:

> You have heard evidence of a controlled purchase made between Kenneth Bell and an undercover informant. The purchase was not part of the conspiracy in this case. It cannot be used as evidence of either defendant's guilt in this case.

Def.'s Second Proposed Jury Instructions, DN 84. Bell's counsel expressed the view that although the controlled purchase with Bell was not relevant to his guilt on conspiracy, "ultimately, if we give [the jury] this instruction, the matter is cured." Tr. at 1176. After hearing argument on the parties' competing proposals, I agreed to instruct the jury:

> You have heard evidence about a controlled purchase made between defendant Kenneth Bell and a cooperating individual. You may consider this evidence only as a rebuttal to evidence presented by defendant Bell about the investigation conducted by law enforcement in this case. This purchase was not part of the conspiracy in this case.

6

Jury Instructions, 16. DN 91.

The government made no reference to the controlled purchase during its closing or rebuttal arguments. Bell's attorney did refer to the purchase, however. After arguing that all of the witnesses who had testified against Bell had lied, Bell's counsel continued:

> And so then what happens? Faced with this, all of a sudden out of the blue at the end we hear some claim Mr. Bell, he, there was a controlled purchase with Mr. Bell? All of a sudden?
> And, ladies and gentlemen, with no recordings, with no evidence, nothing provided to you, the jury? And, ladies and gentlemen, that comes up at the very end all of a sudden when the case is lost. And what do you find out about that? Well, you're getting an instruction about that too. This was not part of the conspiracy in this case. So at the end of the day, they try to throw out something that is not part of this case at all. What does that tell you about how good the evidence that they've got about this case is? No. This is just a last ditch effort that does not work because it doesn't have anything to do with this conspiracy, and there's no evidence of it to begin with.

Tr. at 1220-21.

## II.

The present iteration of Bell's argument is that the admission of Officer Lipsey's testimony on cross-examination fails the test the Seventh Circuit articulated in *Gomez*, which requires that courts look beyond merely the articulation of a plausible, non-propensity purpose (such as to show knowledge, intent, or identity) before admitting other acts evidence, and

7

determine whether the "chain of reasoning" that makes the evidence relevant relies on a propensity-based rationale.

Bell's reliance on *Gomez* is misplaced. In *Gomez*, the defendant was charged with conspiracy to distribute cocaine and related crimes. After the government introduced "overwhelming" evidence that linked incriminating telephone calls to Gomez's residence, Gomez argued that his brother-in-law, who lived at the same house, must have been the culprit. In response, the government sought to introduce evidence that a small quantity of cocaine was recovered from the pocket of a pair of pants found in Gomez's bedroom at the time of his arrest, which was twenty-six days after the alleged conspiracy had ended.

The trial judge admitted the evidence for the purpose of proving Gomez's identity as one of the participants in the recorded phone calls. The Seventh Circuit reversed, concluding that the cocaine evidence was relevant to Gomez's identity only through a chain of reasoning that included a forbidden propensity inference. *Gomez*, 763 F.3d at 861. In other words, for the pants-pocket cocaine (described by the court as a "user quantity") to have any relevance at all, the finder of fact would have had to reason that because Gomez had possessed cocaine at some point, it was more likely he than his brother-in-law who was involved in the cocaine conspiracy.

In contrast to *Gomez*, the government never suggested in this case that the controlled purchase from Bell supported any element of the conspiracy charge against him. Also in contrast to *Gomez*, the jury here received an instruction telling it concretely "what it legitimately may do with the evidence," *Gomez*, 763 F.3d at 860, namely, that it could consider the evidence "only as a rebuttal to evidence presented by defendant Bell about the investigation conducted by law enforcement in this case." Jury Instructions, 16. DN 91.

At all events, *Gomez* does not respond to the government's argument that Bell opened the door to Officer Lipsey's testimony. Indeed, *Gomez* did not address, much less did it eviscerate, the principle that a defendant may open the door to the admission of otherwise inadmissible testimony, for which the government cites, *inter alia*, by *United States v. Villegas*, 655 F.3d 662, 672 (7th Cir. 2011).

In *Villegas* the court explained:

> When a party opens the door to evidence that would be otherwise inadmissible, that party cannot complain on appeal about the admission of that evidence. *United States v. Gilbertson*, 435 F.3d 790, 797 (7th Cir. 2006); *see also United States v. Martinez*, 988 F.2d 685, 702 (7th Cir. 1993). The district court is within its discretion in allowing the testimony if the objecting party has already opened the door for such testimony. *United States v. Anifowoshe*, 307 F.3d 643, 649 (7th Cir. 2002); *see also United States v. Touloumis*, 771 F.2d 235, 241 (7th Cir. 1985) ("This circuit has held on numerous occasions that when a party questions a witness on a subject, even though

9

> that subject may not be strictly relevant to the case, the party cannot complain on appeal if the opposing party subsequently introduces evidence on the same subject."). However, "[w]here the rebuttal evidence does not directly contradict the evidence previously received, or goes beyond the necessity of removing prejudice in the interest of fairness, it is within the district court's discretion to deny its admittance." *Martinez*, 988 F.2d at 702. Indeed, the "open door" doctrine's soundness depends on the specific situation in which it is used and thus calls for an exercise of judicial discretion. 21 C. Wright & K. Graham, Federal Practice and Procedure § 5039, p. 199 (1977); *see also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 177, 109 S. Ct. 439, 102 L. Ed. 2d 445 (1988) (Rehnquist, J., dissenting).

655 F.3d at 672.

These cases indeed support the government's argument that Bell opened the door to the evidence he now challenges. Bell's examination of Officer Lipsey began with a reference to Operation Blue Knight, which he characterized as "the investigation of this conspiracy." Tr. 1130. This framing was presumably designed to elicit—and it did in fact elicit—testimony about the entire universe of controlled purchases made in the course of Operation Blue Knight, rather than about the narrower subset of controlled purchases that produced evidence relevant to this case. Indeed, for purposes of Bell's defense, which highlighted what Operation Blue Knight did *not* uncover, it was advantageous to emphasize the breadth of the investigation. Far from carefully carving out the investigative activities underlying the charges in this case, Bell's counsel deliberately

blurred the line between "Operation Blue Knight" and the investigation of this conspiracy.

Bell's submissions lack any meaningful effort to distinguish *Villegas* or the cases analyzed in that decision. In fact, neither brief in support of Bell's renewed motion even mentions these cases. Bell's only reference to *Villegas* was his assertion, in the reply supporting his original post-trial motion, that, "[t]his is a case 'where the rebuttal evidence does not directly contradict the evidence previously received, or goes beyond the necessity of removing prejudice in the interest of fairness….'" DN 110 at 8 (quoting *Villegas*, 655 F.3d at 672). But the remainder of the sentence that Bell coyly quotes incompletely states that in such cases, "it is within the district court's discretion to deny its admittance." 655 F.3d at 672 (quoting *United States v. Martinez*, 988 F.2d 685, 702 (7th Cir. 1993)). Bell points to nothing in *Villegas*—or in any other case involving a defendant who opened the door to otherwise inadmissible evidence—to suggest that Officer Lipsey's testimony on cross-examination exceeded the bounds of appropriate rebuttal under the circumstances here.

In short, Bell cannot have it both ways, on the one hand using Officer Lipsey's testimony to paint the picture of a sweeping and exhaustive investigation, while on the other precluding the government from exposing the full range of

evidence that investigation uncovered. Having made the strategic decision to question Officer Lipsey about the full range of law enforcement's investigation in Operation Blue Knight, Bell cannot be heard to complain that the government was allowed to probe the answers Officer Lipsey provided.

Even if I were persuaded, however, that the admission of the evidence was erroneous, I am confident that any error was harmless. The test for harmlessness is "whether, in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded." *Gomez*, 763 F.3d at 863. That is not the case here.

As noted above, not only did the government make no mention of the evidence to persuade the jury of Bell's guilt, Bell's attorney offered his own spin on the evidence in closing, to which the government did not respond. Additionally, the jury instruction clearly told the jurors that they could not use the evidence in deciding whether Bell was guilty as charged, and could only consider it in evaluating the strength of Bell's defense. As the *Gomez* court acknowledged, "[a]ppropriate jury instructions may help to reduce the risk of unfair prejudice inherent in other-act evidence." *Id*. at 860. That is what happened here. While the final jury instruction was slightly different from the one Bell's counsel proposed (and which he agreed "cured" the matter, *see* Tr. 1176), the primary difference

brought the instruction more closely in line with the court's directives in *Gomez*, since it affirmatively told the jurors the purpose for which they could legitimately consider the evidence, while Bell's proposed instruction did not. *Id.* ("A good limiting instruction needs to be concrete so that the jury understands what it legitimately may do with the evidence") (quoting *U.S. v. Jones*, 455 F.3d 800, 812 (7th Cir. 2006)).

Finally, nothing in the record suggests that the jury failed to understand and apply the limiting instruction. *See United States v. Chambers*, 642 F.3d 588, 596 (7th Cir. 2011) ("Absent any showing that the jury could not follow the court's limiting instruction, we presume that the jury limited its consideration of the testimony in accordance with the court's instruction."). Under the circumstances, there is no reason to believe that Officer Lipsey's testimony had any effect whatever on the jury's assessment of Bell's guilt.

III.

For the foregoing reasons, Bell's motion for a new trial based on the admission of Officer Lipsey's testimony is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: December 22, 2014

13